FILED
SUPERIOR COURT
OF GUAM

2025 FEB 19 PM 4: 27

CLERK OF COURT

BY:_____/bm/_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THOMAS J. FISHER, as Taxpayer and in his Official Capacity as a Senator of the 37th Guam Legislature,<br><br>Plaintiff,<br><br>v.<br><br>IGNACIO C. SANTOS, in his official capacity as a Government of Guam Federal Programs Administrator and in his private capacity, and DOES 1-5,<br><br>Defendants. | CIVIL CASE NO. CV0392-23 |
| IGNACIO C. SANTOS, in his official capacity as a Government of Guam Federal Programs Administrator and in his private capacity,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>JON FERNANDEZ, FRANK COOPER-NURSE, in his individual capacity Chief Auditor of GDOE; K. ERIK SWANSON, Ph.D., in his official capacity as the Superintendent of the Guam Department of Education, and the GOVERNMENT OF GUAM,<br><br>Third-Party Defendants. | **DECISION AND ORDER**<br>*Re: Third-Party Defendant Jon Fernandez's Motion to Dismiss Complaint and Third-Party Complaint* |

This matter came before the Honorable Arthur R. Barcinas on November 19, 2024, for a hearing on, *inter alia*, Third-Party Defendant Jon Fernandez's ("Fernandez") Motion to Dismiss Complaint and Third-Party Complaint. ("Motion") filed on July 29, 2024. The Motion was filed to request dismissal of the Complaint filed by Thomas Fisher ("Fisher"), as a taxpayer and in his official capacity as a Senator of the 37th Guam Legislature, on July 5, 2023, and the Third-Party Complaint filed by Defendant/Third-Party Plaintiff Ignacio C. Santos ("Santos"), in his personal capacity and his official capacity as a Government of Guam Federal Programs Administrator, on May 2, 2024. At the hearing, Attorney Vanessa L. Williams appeared on behalf of Fernandez, and Santos was present, represented by Attorney Edwin J. Torres.

## BACKGROUND

On July 5, 2023, Plaintiff Thomas J. Fisher ("Fisher"), filed a Complaint against Santos as a taxpayer and in his official capacity as a Senator of the 37th Guam Legislature. In the Complaint, Fisher alleged that Santos, as the Federal Programs Administrator for the Guam Department of Education ("GDOE"), had failed to properly discharge his duties in regard to the management of public monies after overtime payments were issued to GDOE employees.

On May 2, 2024, Santos filed his Verified Answer, as well as a Third-Party Complaint against Third-Party Defendants Jon Fernandez; Kenneth Swanson, in his official capacity as Superintendent of GDOE; Franklin Cooper-Nurse, in his individual capacity as Chief Auditor of GDOE; and the Government of Guam. In the Third-Party Complaint, Santos alleged that he was not at fault because he only had authority to certify the availability of funds, not authority over the actual expenditure of GDOE funds; Santos alleged instead that expenditure authority lay with Fernandez and Cooper-Nurse, adding that "if any party is responsible for the expenditure of funds, Guam law states that it is the superintendent of GDOE." Third-Party Compl., ¶¶ 19, 23. In the Third-Party Complaint, Santos further alleged that Swanson and GDOE had declined

to request the Office of the Attorney General ("OAG") to represent Santos in his official capacity, in alleged violation of 5 GCA §§ 7111 and 30108; Santos then requested the Court to enter a declaration as to whether Swanson and the Government of Guam must pay his attorneys' fees if he is exonerated.

On July 29, 2024, Attorney Williams filed the instant Motion on behalf of Fernandez. In the Motion, Fernandez requests dismissal of Fisher's Complaint under Guam Rules of Civil Procedure ("GRCP") 12(b)(6) for failure to state a claim upon which relief may be granted, arguing that claims based on violations of Title 4, Chapter 4 of the Guam Code Annotated ("GCA") should be dismissed because the statute is allegedly unconstitutionally vague. Fernandez then argues for dismissal of the Third-Party Complaint under GRCP 12(b)(1), arguing that Santos may not avail himself of 7 GCA § 7103 (the "Taxpayer Statute") because Santos allegedly lacks both statutory and prudential standing. Finally, Fernandez argues for dismissal of the Third-Party Complaint under GRCP 12(b)(6), on the grounds that there is allegedly no statutory or common law right of contribution for the enforcement of proper government spending.

On August 23, 2024, Santos filed his opposition, arguing that Fernandez may not invoke the protections of sovereign immunity because Santos is allegedly suing Fernandez in his individual capacity for contribution for a judgment pursuant to 5 GCA § 7103. Santos further argues that he only needs to provide the Court with sufficient allegations to support that he has standing to sue for contribution, and he does not need to provide support for claims under 5 GCA § 7103 because he is not seeking contribution from Fernandez under § 7103. Santos asserts that he has sufficiently alleged enough facts to support his standing for contribution, and that by seeking contribution, he is enforcing his individual right of recovery from the third parties he alleges are rightfully at fault, which Santos asserts meets the requirements of

prudential standing. Santos further asserts that he has alleged enough facts to support a claim for contribution from Fernandez under GRCP 14(a). On the dismissal of the original Complaint for unconstitutional vagueness, Santos takes no position, as he asserts that his claims are contribution claims not brought under the Taxpayer Statute.

On September 6, 2024, Fernandez filed his Reply. Fernandez first argues that Santos should not be allowed to bring a claim for contribution for his "intentional and willful conduct." Reply, at 2. Fernandez then re-asserts that Santos has no standing to enforce 5 GCA § 7103. Finally, Fernandez asserts that his argument to dismiss the Complaint was opposed by neither Fisher nor Santos, and reasserts that Title 4, Chapter 14 of the GCA is too vague to provide adequate notice of Fisher's claim.

The Court took the matter under advisement on November 19, 2024.

## DISCUSSION

### I.     Legal Standard

Under Guam law, "[a]t any time after the commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action, who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." GRCP 14(a). "The person served with the summons and third-party complaint ... shall make any defenses to the third-party plaintiff's claim as provided in Rule 12.... The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim." *Id.*

Guam law allows that certain defenses to a claim for relief may be made by motion, including: "(1) lack of jurisdiction over the subject matter, ... [and] (6) failure to state a claim upon which relief can be granted." GRCP 12(b).

a. GRCP 12(b)(1) - Subject Matter Jurisdiction

Fernandez asserts that the Court lacks subject matter jurisdiction over the Third-Party Complaint based on a lack of standing. "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *United Pac. Islanders' Corp. v. Cyfred, Ltd.*, 2017 Guam 6 ¶ 15. "Although we are not bound by the standing requirements applicable to federal courts of limited jurisdiction under Article III of the United States Constitution, we have repeatedly found that the traditional standing requirements expressed in Article III nevertheless apply to claims asserted in Guam's courts." *In re A.B. Won Pat Int'l Airport Auth., Guam*, 2019 Guam 6 ¶ 16 (internal quotations omitted). This constitutional standing is a threshold jurisdictional matter. *Id.* "To establish constitutional standing, a party must show: (1) it has suffered an injury in fact; (2) that the injury can be fairly traced to the challenged action taken by the defendant; and (3) that it is likely and beyond mere speculation that a favorable decision will remedy the injury sustained." *Id.* ¶ 17. However, even without constitutional standing, the Guam Supreme Court has held that standing may be statutorily conferred by the Legislature. *See Benavente v. Taitano*, 2006 Guam 15 ¶ 20. "Sovereign immunity is a component of subject matter jurisdiction." *Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶¶ 12-13. "Because sovereign immunity implicates a court's subject matter jurisdiction, it can be raised at any time, either by a party or by the court." *Id.*

"Sovereign immunity means that a sovereign cannot be sued in its own courts without its consent." *Id.* "Suits against government officers may [also] properly be considered suits against the sovereign ... if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect would be to restrain the Government from acting, or to compel it to act." *Guam Fed'n of Teachers ex rel. Rector v. Perez*, 2005

Guam 25 ¶ 19. However, "[t]hrough the Organic Act of Guam, 'Congress has provided a specific mechanism by which sovereign immunity may be waived.'" *Bautista v. Agustin*, 2015 Guam 23 ¶ 18. "'The government of Guam ... shall have power to sue by such name, and, with the consent of the legislature evidenced by enacted law, may be sued upon any contract entered into with respect to, or any tort committed incident to, the exercise by the government of Guam of any of its lawful powers.'" *Id.* (quoting 48 U.S.C.A. § 1421a). "Thus, in order for a suit to be maintained against the Government of Guam and any of its instrumentalities or agencies, sovereign immunity must be expressly waived by duly enacted legislation." *Id.* "[A]bsent such legislation, the Government of Guam cannot be sued." *Id.* ¶ 22. However, in addition to express statutory waiver, the Legislature has also waived sovereign immunity through, *inter alia*, the Government Claims Act and enabling legislation that grants an agency the right to sue and be sued. *See Bautista v. Agustin*, 2015 Guam 23 ¶¶ 22-24, 28. The enabling legislation of the Department of Education grants the right to sue and be sued only to the governing Board of Education. "The Board, among other duties, shall perform the following in accordance with applicable law: ... (g) sue and/or defend itself in suits at law." 17 GCA § 3102.1(g).

b. GRCP 12(b)(6) - Failure to State a Claim for Which Relief May Be Granted

In ruling on a motion to dismiss under GRCP 12(b)(6), the Court must accept all the well-pleaded facts as true, construe the pleading in the light most favorable to the non-moving party, and resolve all doubts in the non-moving party's favor. *Cruz v. Cruz*, 2023 Guam 20 ¶ 10. Dismissal for failure to state a claim is appropriate only if it appears beyond doubt that the non-moving party can prove no set of facts in support of his claim which would entitle him to relief. *Id.*

## II. Whether the Third-Party Complaint claims against Fernandez are barred by sovereign immunity

Fernandez first argues that Santos's claims against him are improperly brought because 5 GCA § 7103 does not expressly waive sovereign immunity for contribution. 5 GCA § 7103 dictates:

> Any taxpayer who is a resident of Guam shall have standing to sue the government of Guam and any officer, agent, contractor, or employee of the Executive Branch of the government of Guam for the purpose of enjoining any officer, agent, contractor, or employee of the Executive Branch of the government of Guam from expending money without proper appropriation, without proper authority, illegally, or contrary to law, and to obtain a personal judgment in the courts of Guam against such officers, agents, contractors, or employees of the government of Guam and in favor of the Government of Guam for the return to the Government of Guam of any money which has been expended without proper appropriation, without proper authority, illegally, or contrary to law. For purposes of this Chapter, the Governor and Lt. Governor of Guam are officers of the government of Guam, and are included within the scope of this Chapter.

Fernandez asserts that he is entitled to sovereign immunity based on the fact that Santos's claims against him are based on actions Fernandez allegedly took in his capacity as the former GDOE Superintendent. The Court does not find this argument compelling for two reasons.

First, Santos is suing Fernandez in his personal capacity, and "an award of damages against an official in his personal capacity can be executed only against the official's personal assets." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Id.* at 167-68.

Second, because Santos's Third-Party Complaint does not cite 5 GCA § 7103 as a basis for relief, the Court does not find it material to evaluate it in deciding the Motion to Dismiss. Thus, all arguments pertaining to § 7103 will be disregarded by the Court at this time.

Accordingly, the Court will **DENY** the Motion to Dismiss in regard to this argument.

### III.     Whether Fisher fails to state a claim for which relief may be granted

Fernandez then asserts that Fisher's second cause of action in the Complaint and Santos's claim against Fernandez both allege violations of Title 4, Chapter 14 of the GCA, which prohibits the disbursement of public funds except as provided in Chapter 14 "and by the persons designated or delegated by the authority of the law and in accordance with applicable Federal and Guam laws." Mot., at 4 (quoting 4 GCA § 14105). Fernandez argues that all of Chapter 4 "is vague in violation of due process of law" for not "clearly delineat[ing] the conduct it proscribes." Fernandez further argues that Chapter 4 "utterly fails to provide clear guidelines or standards for determining accountability and liability for improper payments made by government officers" and that the lack of "clearly defined standards of conduct does not provide fair notice to allow a person to know what they must do to avoid liability." Mot., at 12. Fernandez asserts that government employees who handle financial matters within the government of Guam allegedly fall within the umbrella term of "Accountable Officers," a term which Fernandez asserts has multiple definitions and includes, *inter alia*, Certifying Officers, Disbursing Officers, and Collecting Officers. *Id.* at 10 (citing 4 GCA §§ 14104, 14106. Fernandez further asserts that, pursuant to 4 GCA § 14109, all such Accountable Officers may be held liable for losses of the government of Guam even if they may not be at fault. As of the hearing date, Fisher had not filed an opposition to the argument, nor did his counsel argue against the argument at the hearing.

Pursuant to Local Rule 5B of the Rules of the Superior Court ("Rules") states, in the event of failure to file an opposition, "[a]bsent good cause shown, failure to file [a timely opposition] has the same effect as filing a notice of non-opposition." *Pet. of Quitigua v. Flores*, 2004 Guam 19 ¶ 24. Further, Local Rule 3A of the Rules provides that "[a]bsent good cause shown, papers not timely filed shall be disregarded by the court." However, "nothing in Rule 3 or Rule 5 mandates that the failure to file an opposition to a motion automatically results in that motion being granted," and those Rules "do not relieve the lower court of its duty to consider the merits of the motion before it." *Id.* ¶ 27.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *People v. Manglona*, 2024 Guam 8 ¶ 15. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). This principle is violated where a law either "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *U.S. v. Williams*, 553 U.S. 285, 304 (2008) "In the context of civil statutes regulating economic activity, the standard is sufficiently low that statutes are unconstitutionally vague only when they are 'so vague and indefinite as really to be no rule or standard at all." *Boutilier v. INS*, 387 U.S. 118, 123 (1967).

Upon review of Title 4, Chapter 14, the Court does not find the statutes in question to be unconstitutionally vague. Pursuant to 4 GCA § 14104, an accountable officer is "[a]ny government of Guam officer or employee who, by reason of the person's employment, is **responsible for or has custody of government funds or who physically handles government funds, even if only once or occasionally, and is accountable for those funds while in the individual's possession.**" (emphasis added). Such officers are divided into four categories

according to their work responsibilities: (1) Certifying officers, who are responsible for determining and certifying the legality of the disbursement of public funds, but who do not have physical possession of the funds; (2) Disbursing officers, who disburse funds and render accounts in accordance with laws and regulations governing disbursement of public funds, and have physical possession or control of said funds; (3) Cashiers, who are appointed to perform limited cash disbursing functions or other cash-handling operations to assist a finance officer; and (4) Collecting officers, who are authorized to receive or collect money for the government. *Id.*

4 GCA § 14109 provides that "[s]trict liability denotes that the accountable officer is an insurer of the funds," and "[a]n accountable officer is automatically liable when the loss occurs." § 14109(a), (b). Fernandez seems to argue that § 14109(b) is at odds with 14109(b)(1), which Fernandez claims provides that "the accountable officer is not liable unless the improper payment was the result of a 'certified voucher.'". Mot., at 11. However, the Court believes Fernandez misconstrues the statute. 14109(b)(1) does not provide that "an **accountable** officer is not liable" in the above circumstances; it provides that "[a] **certifying** officer is not liable" in those circumstances. This is relevant because, as stated above, certifying officers are a specific category of accountable officers "who certif[y] that payment vouchers are correct and ready for payment," but "do ... not have physical possession of the funds." § 14106(a). It stands to reason that a certifying officer would not be liable for the loss of funds if they do not physically possess said funds, and it further stands to reason that they would be liable for an improper payment based off an incorrectly certified voucher, as such vouchers are their responsibility. *But see* 4 GCA § 14109(c) (regarding liability for other categories of accountable officers "who [have] physical possession or control of government funds is automatically liable when the

physical loss or erroneous payment is made"). Thus, the Court is not compelled by Fernandez's first argument.

Next, Fernandez argues that the strict liability standard stated in § 14109(a) "cannot be reconciled with the standard of negligence then enunciated in section § 14109(c)." 14109(c) provides that "[t]here may be more than one liable accountable officer: (1) because more than one person was negligent," e.g., "the employee whose error caused the loss and the supervisor who entrusted funds to an unqualified employee"; and "(2) because their positions make both of them accountable," e.g., "the employee who makes the actual payment and the officer in whose name the account is held." § 14109(c)(1)-(2). Upon review of the statute, the Court again finds that Fernandez misconstrues the statute. Under the theory of strict liability, § 14109(b) states that "[a]n accountable officer is automatically liable when the loss occurs," and then in 14109(b)(1) and (3), states under what circumstances that automatic liability occurs. A certifying officer becomes automatically liable **"at the moment of the improper payment"** that they certified the voucher for, and "[a] disbursing officer, cashier or other officer who has physical possession or control of government funds is automatically liable **when the physical loss occurs or erroneous payment is made."** However, contrary to Fernandez' assertions, the Court does not find that the statute imposes a strict liability standard for a singular liable officer and a separate negligence standard for multiple officers, but rather imposes both for the sake of comparative fault. "[F]ault can be apportioned between individuals or companies that are negligent as well as strictly liable." *Romine v. Johnson Controls, Inc.*, 224 Cal.App.4th 990, 1009 (2014). California law holds that, even where the defendants' responsibility for an injury rests on a strict liability theory of responsibility, a trial court is allowed to apply comparative fault principles. *Phipps v. Copeland Corp., LLC*, 64 Cal.App.5th 319, 332 (2021); *David v. Hernandez*, 226 Cal.App.4th 578, 591 (2014). "Under the principles of comparative fault, a

person's negligent conduct [is] assigned a share of fault greater than zero percent ... when the conduct was a substantial factor in the causation of the pertinent injuries." *Id.* Guam's statutory scheme acknowledges the use of the comparative fault doctrine in our jurisdiction. *See* 7 GCA § 24606(c) (holding that a settlement made in good faith shall bar joint tortfeasors from bringing claims, *inter alia*, based on "comparative fault"). Thus, the Court finds that the strict liability standard suggested in § 14190(a) could be reconciled with the use of negligence in 14109(c) to determine comparative fault between multiple liable parties.

Regarding Fernandez's argument that 4 GCA § 14113 does not clearly state the manner of relief, the Court believes that Fernandez may again be misconstruing the statute. The title of § 14113 states fairly clearly that it is intended to "[o]btain ... relief from liability," meaning that those accountable officers found liable under this Chapter would be relieved from said liability. As to the conditions for obtaining relief, the Court finds them to be fairly straightforward. The Court reads the statute to mean that a potentially liable accountable officer may receive relief if either: (1) there was an improper certification based on official records, and the officer did not know or could not reasonably have discovered that the information was incorrect; or (2) "the [officer's] obligation [to repay the amount of the loss or erroneous payment] was incurred in good faith," "payment was not prohibited by law," "the government of Guam received some benefit," and "the agency made diligent efforts to collect the debt." 4 GCA § 14113(a)(b); 4 GCA § 14111(a)(3).

Regarding the bases for relief in 4 GCA § 14115, the Court finds that the imposition of strict liability on accountable officers while also creating a rebuttable presumption of negligence may be found constitutional in certain instances, and thus does not necessarily create a set of facts under which no claim for relief may be sought. The bases for relief provide clear notice to accountable officers, stating that the rebuttable presumption of negligence is raised by "loss or

deficiency." The accountable officers are aware of what conduct would trigger such a presumption, that being a financial loss or deficiency. 5 GCA § 14111(b)(2), regarding due care, also states that "[r]egulations dictate the accountable officer's actions in most instances," and that "[f]ailure to follow the regulations will result in a finding of negligence and a denial of relief if the negligence caused the loss." "If there are no regulations governing the specific actions of the accountable officer, the Comptroller will apply a reasonable person standard," i.e., whether the accountable officer did what a reasonably prudent and careful person would have done to take of their own funds or property under similar circumstances. *Id.* (b)(3). The Court further finds that 7 GCA §14115 does not encourage arbitrary enforcement, because the statute effectively limits liability to cases where an accountable officer fails to rebut the presumption, and the Court can apply a clear standard for rebutting negligence.

Therefore, because the Court does not find any instances that fair notice or fair enforcement are prevented by Chapter 14 of Title 4, the Court finds that the statutes within that chapter are not so unconstitutionally vague that it would render Fisher's notice of his claim insufficient.

Accordingly, the Court will **DENY** the Motion to Dismiss the original Complaint for unconstitutional vagueness.

IV.    **Whether Santos has standing to sue under 5 GCA § 7103**

Fernandez argues that Santos lacks standing to sue under 5 GCA § 7103 because he is suing for "all costs of any injunctive or equitable relief imposed on Third-Party Plaintiff and for all damages, costs or other monetary liability assessed against Third-Party Plaintiff," and because he is "plainly not seeking to enjoin Mr. Fernandez as an officer or employee of the Executive Branch of Guam from expenditures of public funds." Mot., at 7.

First, the Court again does not find this argument material to Santos's contribution claim, as Santos is not bringing any claim in his Third-Party Complaint pursuant to 5 GCA § 7103, but instead seeks contribution from Fernandez and Cooper-Nurse based on a separate claim. Santos makes no reference to 5 GCA § 7103 or even the word "taxpayer," save for when he refers to the Complaint filed by Fisher, which Santos stated was brought pursuant to 5 GCA § 7103.

Second, even if the Court did find this argument material, Fernandez's argument here contradicts his earlier argument that he is entitled to sovereign immunity under § 7103. Fernandez asserts that "[Santos's] claims against Mr Fernandez are based solely on actions Mr. Fernandez took in his capacity as GDOE Superintendent" and that "the plain language of 5 GCA § 7103 shows that the Legislature did not unequivocally and expressly waive sovereign immunity under this statute for contribution." Mot., at 9. Fernandez further states that he "adopts GDOE's arguments as being applicable to the third-party claims against him and emphasizes that strictly construing the plain language of 5 GCA § 7103 shows that the Legislature only unequivocally expressed a waiver of sovereign immunity for the purpose of enjoining an Executive Branch employee from expending money improperly, illegally, or unlawfully." *Id.* If Fernandez invokes the protections of sovereign immunity, he asserts that he is being sued as a government employee and that bringing suit against him would be bringing suit against the government. However, Fernandez now submits that he cannot be sued under the taxpayer statute because Santos is "plainly not seeking to enjoin Mr. Fernandez as an officer or employee of the Executive Branch of Guam from expenditures of public funds." If Santos is not seeking to enjoin Fernandez in his official capacity, then sovereign immunity should not apply. Because Fernandez is making two contradictory arguments for dismissal, the Court will deny both.

The Court also notes that Fernandez's adoption of GDOE's arguments would essentially render this entire Motion moot, as one of GDOE's arguments is that Santos's claim against Fernandez should **not** be dismissed. GDOE Mot. to Dismiss, at 3, 10.

Therefore, the Court will also **DENY** the Motion to Dismiss regarding this argument.

## V. Whether the Third-Party Complaint claim against Fernandez is barred by the doctrine of prudential standing

Fernandez argues that Santos's claim for contribution is barred by the doctrine of prudential standing because Santos is allegedly not "within the class of plaintiffs whom the Guam Legislature authorized to sue to enforce proper government spending under 5 GCA § 7103," and that, even if he was, the claim would fail because Fernandez is no longer part of the government of Guam. The Court does not find this compelling. First, Fernandez's argument for prudential standing regarding Santos's ability to bring a claim under 5 GCA § 7103 is immaterial for the reasons stated above. Second, Fernandez's departure from the government of Guam does not render him immune to any actions alleged during his tenure as part of the government. *See Hafer v. Melo*, 502 U.S. 21 (1991) (finding that former government officials are not immune from lawsuits when sued for actions taken while in office).

Accordingly, the Court will also **DENY** the Motion to Dismiss regarding this argument.

## VI. Whether Santos fails to state a claim upon which relief can be granted.

Finally, Fernandez argues that Santos fails to state a claim upon which relief can be granted because the Third-Party Complaint allegedly does not plead sufficient facts to support a legally cognizable right to relief. However, the Third-Party Complaint alleges that Fernandez had expenditure authority and that any liability assessed against Santos would be based on Fernandez's independent decision-making. Pursuant to GRCP 12(b)(6), the Court must accept these allegations as true at the pleading stage. Fernandez further argues that the type of

contribution sought by Santos is not contained within 5 GCA § 32118 or 7 GCA § 24604, but the Court does not find this argument compelling. No Guam statute expressly states that contribution may be sought only under those statutes, or that contribution must be sought under statute in all cases. Further, Fernandez asserts that Santos has no common law right of contribution for the enforcement of proper government spending, but does not provide any citation stating the limits of the common law right of contribution, or explain why Santos's claim for contribution must necessarily be construed as one for enforcement of proper government spending. To the contrary, the Court finds that has sufficiently pled notice of his contribution claim, and will therefore **DENY** Fernandez's Motion to Dismiss in regards to the contribution claim.

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Fernandez's Motion to Dismiss.

**IT IS SO ORDERED** ___FEB 1 9 2025___ .

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**